Good morning, Your Honors. May it please the Court, the District Court committed three injunctions. First, in concluding that there were issues with the validity of the patent due to the presence of other machines on the market without any analysis whatsoever of the priority date of the patent or the date of introduction of these machines onto the market. Second, in concluding that the patent was not infringed because Claim 1 requires the bed frame to be raised. And third, in concluding that TREBRO had not suffered irreparable harm. I will address each of these three points in turn. Can I ask you just a preliminary question, which is, what is the status of this case now, because we're just here on the C.I.? I will be, we're in the middle of the discovery period. Neither side, I appreciate that question, Your Honor, neither side has exchanged written discovery responses yet, and I will be Is there a trial schedule? No trial date set. Judge Haddon is sitting interim. The judge who denied the motion for preliminary injunction was two weeks from retirement when he rendered this decision, and we're waiting for the new judge to be appointed. Judge Haddon does not set trial dates until the conclusion of the discovery period. Thank you, Your Honor. With respect to validity, the validity of the 638 patent has been upheld by the U.S. Patent and Trademark Office in connection with the reexamination proceeding initiated by the defendants. In that decision, the patent office held that the date of invention was in fact November 2004, based on the same memorandum that was presented to the court at the preliminary injunction hearing. The patent office also noted that the defendant's Section 102A argument was inapplicable because the invention described in the 362 patent was not made by others. The defendant's 102A argument fails for both of these reasons, because the invention described in the 638 patent was made before the publication date of the 362 patent, and also because the inventors are the same on both patents. They were within the grace period, right? Correct. Correct, Your Honor. Is it your understanding that, let's assume we were to agree with you on both the validity and the infringement issues here, which both go to likelihood of success on the merits, that notwithstanding that, if we were to agree with the judge on the absence of irreparable harm, the result here would be the same? In other words, that you need to establish irreparable harm irrespective of whether or not we agree with you on the likelihood of success. I agree, Your Honor. Let's turn directly to irreparable harm, then. Yes. The district court did not take into consideration several pertinent factors. This is a very unique market. The market for sod harvesting equipment is extremely small. There are only three primary competitors, including Firefly, which is now a recent entrance to the market. Trabro sells only sod harvesters. Trabro is a very small company, about 18 employees, and it sells roll harvesters that roll the sod up into rolls, and these slab sod harvesters that cut the slab into doormat-sized pieces. Well, what the district court said, and I understand he was pretty succinct, but what he said was that your client did not state that the loss of a sale of a sod harvester would result in a loss of 50,000 gross profit, which would result in employees being laid off. Is that the sum and substance of his case, and if so, isn't there a reasonable basis for this judge to have concluded that kind of speculation was not sufficient? It is not the sum and substance, Your Honor, but thank you for getting directly to the case that Mr. Opashin testified. So again, it comes back to the procedural posture of this case. There were certain facts we learned, even as a result of Mr. Opashin's testimony, that heightened our concern, both with respect to Firefly's ability to satisfy any monetary judgment in this case, but most significantly with respect to the market loss that will be suffered by Trabro. Mr. Tvetny knew going into this hearing that he was going to suffer some market loss, and he did testify in response to a question about that, that that market loss was not calculable. However, what we learned at the preliminary injunction hearing was that Firefly had delivered one of these harvesters to an existing customer of Trabro, and had pre-sold seven more. Now Mr. Tvetny stated in his affidavit that Trabro has sold roughly 50 of these types of harvesters over the past eight years, so that equates to seven or so a year, but he testified at the preliminary injunction hearing that if you look at only the past three years, Trabro has sold four per year. So when you consider, Your Honor, that these are not nylons, or disposable razors, or food, or disposable or consumable goods, these are big, expensive machines. Why can't it be compensated in terms of lost profit? He will never recover that market share. When he loses, when Trabro loses a sale, it's losing a ten-year relationship with a customer. How long do these machines last? At least a decade. So a lot of this depends upon servicing those and maintaining them over many years, and if it's your customer, that's the difference in survival. That's exactly right, Your Honor. I thought that Firefly, your competitor, was the one that did the servicing on your sold harvesters. You're correct, Your Honor, to some degree. He does not do all of the servicing, but for the past three years, Firefly has sold replacement parts for Trabro machines, and until it got into manufacturing sod harvesters, that was 80% of its business. And what percent of your business is that? Is the replacement part? Yes, and the servicing. And the servicing. I don't have the answer to that question, Your Honor. I will tell you that Mr. Tvetny testified that if we knew the number of lost machine sales, then he could probably calculate the lost replacement part. Our argument is more the loss of market share. We think this case is analogous to Bosch. Do you have an exclusive right anyway? I mean, should you have to choose between a right and compensation, which puts you out of business, but maybe pays some share of what you lose? I would hope we wouldn't have to make that decision, Your Honor. You have the right, because you made the invention. I would agree with that statement. I appreciate these questions, and continuing on the issue of irreparable harm, the seven sales, about which we learned at the preliminary injunction, constitute Trebro's entire market for slab sod harvesters for nearly two years. And as I stated earlier, these harvesters are not disposable or consumable goods. The farmers who buy them, and there are a very limited number of these sod harvesters in the United States, they usually keep them for a decade or more. If Trebro loses two years of sales to Firefly during the pendency of this lawsuit, it may never recover that market share. In addition, Trebro has a legitimate concern that Firefly may not be able to satisfy a monetary judgment in this case. Because of the procedural posture of this case, no discovery has occurred. But there are facts on the record that support Trebro's concern. Namely, Firefly was formed in 2010 and is a relative... Well, but the concerns I have with that argument that you raised in your briefs was that that concern seemed to be predicated on the number one million, which was based on a trebling of damages. And I'm not sure I know of any of our cases which assume that you evaluate the ability to pay based on the assumption that somebody is going to get three times the award in damages. Do you know of anything? Because that seems a little odd to me. I agree with your perception, Your Honor. I'm not aware of any case directly on point. I would like to state just for the court's edification that the issue of willful infringement did not come up until the preliminary injunction hearing. We were not made aware until that hearing that Brower, the inventor on the 638 patent, had sent Mr. Aposhen an infringement letter in February of this year. So you've got the first of these sod harvesters being delivered in January, the inventor sending Mr. Aposhen a cease and desist letter in February, and then my client acquiring the patents in March. But I agree with your perception on that point, Your Honor. Isn't there some tension analytically between you arguing on the one hand we're going to lose market share and you arguing on the other hand that these guys are going out of business? If they're going out of business, if they're likely to go out of business and not be able to pay the award, then the concern about losing market share to them seems to subside. Do you understand my question? I guess you're asking me to predict what's more likely and I think it goes back to Judge Rader's question. Should we be required to choose? I cannot predict whether Firefly will continue to sell these machines. It's already pre-sold nearly two years of market share for this type of product. So I think that's very unique. That was as of April. We filed a motion for preliminary injunction to prevent Firefly from selling more of these machines at a trade industry convention that was taking place on April 18th. Who knows how many more Firefly sold at that trade show? Who knows how many more Firefly has sold this year? So that's true. It seems like it's quite likely that all of the harm that you anticipate with regard to lost market share has already occurred. I don't think so, Your Honor. With all due respect, for the reason you asked earlier, we've got at least nearly another year, I would say, until trial in this case and I would like to come back to the issue, another very strong reason that I'm here, having to do with the interpretation of Claim 1 and the bed frame being raised. Because if this Court does not resolve that particular issue for us, this case will likely be back before this Court and without a preliminary injunction, we're talking about another year or possibly two of these infringing sales. Your position is that bed frame isn't in Claim 1? Correct. And the Court decided there was no infringement because the accused doesn't raise the bed frame? Correct, Your Honor. We are in agreement that the ProSlab 150 sod harvester does not raise the bed frame, correct? Wasn't the bed frame pretty clearly part of the invention as described in the specs? I'm sorry, wasn't it? Wasn't the bed frame described in the specification as being part of the invention? It was, Your Honor. And at the same time that Claim 1 was amended to add that limitation, Claims 9 and 10 were also added to specify that the mechanism of raising would be by raising the bed frame. That is certainly not the only mechanism by which the horizontal conveyor may be raised and in fact, Mr. Aposhen has described another such method of raising the horizontal conveyor toward the sod carrier in his patent application which was just published in October. We submit that a reading of Claim 1 that would require the bed frame to be raised violates the principles of claim differentiation and the rule that limitations from the specification cannot be read into a claim. As I mentioned earlier, it is important, critically important to the parties in this case that this Court do set the record straight with respect to this particular legal issue. If the Court declines, if this Court declines to reverse the lower court without addressing this particular claim construction issue, it will be the law of the case for purposes of discovery, settlement discussion, summary judgment, and trial. And if this case proceeds below without this error being corrected, we will be back before this Court most likely in a year to address the very same issue. A ruling from this Court at this time on this particular issue will save a great deal of litigation expenses and judicial resources. I would like to address the issue briefly of whether the defendant's sod harvester actually raises the horizontal conveyor toward the sod carrier. Because the District Court based its infringement analysis on the erroneous conclusion that Claim 1 required the bed frame to move upward, it never reached the issue of whether the defendant's horizontal conveyor moves upward toward the sod carrier in any other manner. And it is clear from the evidence in this case that it does. For at least three reasons. Number one, the defendant's own video shows the upward movement of the horizontal conveyor toward the sod carrier, and we included a clip of this video in our brief. Number two, Mr. Aposhen testified at the preliminary injunction hearing that the horizontal conveyor moves upward toward the sod carrier. And three, as I mentioned, Firefly's own patent application about which Mr. Aposhen testified at the preliminary injunction hearing and which was published in October describes the lifting of the top surface of the conveyor belt toward the stacking head which is the sod carrier. For all these reasons, Mr. Fabro has shown a likelihood of success on the merits with respect to infringement and we believe we have also met the four-part eBay test with respect to injunctive release. I'll reserve the remainder of my time. Thank you, Ms. Teague. Mr. Smith. May it please the Court, I'm Timothy Smith, here on behalf of the Appellees, Firefly Equipment LLC, and Stephen Aposhen. The issue before this Court is whether the District Court abuses... You'll quickly concede there's an error on the validity, right? I don't, Your Honor. There's no prior art. Well, what was before the District Court below was the where he was asked about a number of sod carriers including sod harvesters, excuse me, including sod harvesters that were available at least as early as 2000. And all of those, it turns out, were things that were not prior art. That's not correct, Your Honor. What's the prior art that renders this invalid? Well, I'm saying the combination of his testimony where he testified that machines that were available at least as early as 2000 contained all the elements except for that last element of the vertical lifting of the horizontal conveyor. He testified all that was present in machines that were available at least as early as 2000. And then, as Your Honor is aware, this was a pretty expedited procedure at the Court below. If we're to review a denial of a preliminary injunction, don't we have to have an opinion that lays all of that out to indicate why there are reasons to doubt the validity of the patent? We don't have that here, do we? I think that's correct, Your Honor. I think that the record is pretty bare on this at this point, and I think that the order is not completely clear on why the Court made its decisions, where it reached the decisions. And regarding infringement, the bed frame was not in Claim 1. It's not listed in Claim 1. We shouldn't read it from the specification into the claim. Well, the Court... So his non-infringement decision was not justified and not well supported. His non-infringement decision was based on a construction of Claim 1 that was a saving construction, which was based on the prior arguments that had been presented to the Court below. And that evidence consisted of the testimony of Mr. Tvetny, and then we also presented the 610 patent at that time, which we say shows the vertical lifting of a horizontal conveyor. We're aware that that's not prior art. We're aware that there's an issue, Your Honor. But again, we are confident... Is there an issue, or is it prior? Is there any issue that it is not prior art? Based on the fact that it was not invented by others a year prior, it would not qualify. That's right. However, Your Honor, again, this preliminary injunction came literally three weeks after the complaint was filed. And we have, of course, continued to conduct validity searches. We've come across a number of other references that teach this vertical lifting of a horizontal conveyor. You know, and so that was not... Are they prior art? They are prior art, Your Honor. I have copies of them, if you'd like me to... Of course, that's not in our record. That's right, Your Honor. Neither is the fact that... We can either evaluate the merits of this preliminary injunction based on the case you write? There are some holes there, Your Honor, yes. Can we turn to irreparable injury? Yes, Your Honor. Because even if we disagree with the other two factors, the validity and the infringement, you still come to rest, if you can, on the judge's conclusion that there was no irreparable injury. Isn't this the classic case of where, when there are only three people in the market, where you've got these machines that are sold once every ten years to individuals, a very limited market, that this would be the kind of case where a preliminary injunction would be in order because there is irreparable injury? There is not irreparable injury because there wasn't evidence presented below that these machines directly compete with each other. There wasn't evidence that a sale by Firefly would result in a lost sale to Trebro. Trebro does not... I mean, they're sod harvesters. You mean that some people buy certain sod harvesters and therefore they have a different market than you have? There are different types of sod harvesters. There's the roll harvesters, which you mentioned. There's the slab harvesters. And there are different customers out there. I mean, Firefly was targeting different customers out there. They produced a new machine that was much improved over what was available before. And they weren't going after the same customers that Trebro was going after. They're expanding the market with their machine is what's happening with that. Expanding the market how? It's not people who are going to buy harvesters are the same people that buy harvesters for the next 10 years. I don't know. Do you think because you came up with a different machine, all these people that have never bought a harvester are suddenly going to buy yours? I believe that's correct because of the improvements on this machine that people would go out and buy a Firefly sod harvester that would not otherwise purchase one from the other competitors in the market. The southeast part of the United States Did you make that showing before the district court? I don't see any. No, it didn't come up, Your Honor. But with respect to the irreparable harm they didn't show that a loss that is would result in a lost sale to them. They said the market is small. That's correct. But the only other machine arguably that competes with the Firefly machine is sold not by Trebro but by Broward Turf. That machine is the one that encompasses the patented technology at issue here. Trebro acquired these patents from the other competitor and then licensed that back to them, a royalty free license to go ahead and sell whatever machines they want. So arguably if they wouldn't buy a Firefly machine they would go buy a Broward machine, not a Trebro machine. So the damages that they say they would face are purely speculative. Mr. Vetting's testimony was full of mays and possibly and shoulds. Even counsel, she stood here today said that may happen, that may not happen. They just did not meet the burden of showing that there was irreparable harm. With respect to the issue about infringement, they've made arguments in their briefing to this court that the 610 patent was not applicable. And whether or not the 610 patent qualifies as prior art doesn't matter with their arguments that the their machine the 638 patent does not encompass a machine that pivots. And that's exactly what the Firefly machine does, it pivots. It doesn't pivot at one point, it pivots at two. They argue that their machine didn't cover the 610 because it pivoted and once it raised that conveyor it was no longer a horizontal conveyor. They can't shift their argument around and now say that the 638 covers the Firefly machine because it also pivots and it changes the shape of the conveyor. And the resultant shape is not a horizontal conveyor. It's the shape of a parallelogram. And so if they don't if they don't cover machines that pivot and create a conveyor that's no longer horizontal, then they don't cover what was what the Firefly machine does either. And the burden that we carry below was to raise substantial questions about validity and about infringement. And this court has ruled previously in the Amazon.com case that we don't have to prove invalidity at this stage. We have to raise questions about invalidity and questions about the vulnerability of the patent. And I think we've met that burden clearly with even the testimony of Mr. Tibetany alone. I'm looking for the word pivot in the district court's analysis of infringement. I don't see it. That's correct, Your Honor. I'm talking about the construction that they've pushed forward in their briefing to this court. Those arguments weren't made below. Those arguments were made in their arguments to this court. But I thought your argument was that you don't infringe because your machine pivots. That's correct, Your Honor. I'm saying that under either the construction that the district court gave it, which was a saving construction that said lifting of the bed frame, if that's inappropriate, they've argued a different construction and under that construction we also don't infringe under either construction put forward, Your Honor. Can we review this decision on the basis of the arguments both parties made to the district court or on the basis of the district court's opinion? I think you have to look at what the district court's opinion was and see what evidence was there to support it and what arguments were made below. Again, this was a very expedited process, so the record may not be fully developed. I think we've had to go back and look through the record to say this is what supports that decision of the court. That's what we've done, Your Honor, is to show where that's supported by what was in the record before the court. With respect to the validity issue, we do again submit this was a preliminary injunction without any discovery having been conducted. The court's total analysis of that is, what, three paragraphs, but the only analysis part of that I can find is the conclusion claim one is novel or non-obvious. Is there any reasoning there? Any that is supplied to us by the district judge? He does mention the testimony of Mr. Tibetny, I believe, before that, Your Honor. And the court said this is a question best left to the PTO, but didn't I hear that the PTO has affirmed the validity of the patent? It has affirmed the validity of the patent, Your Honor. And, as this court is aware, sometimes the PTO makes mistakes, and we would submit to you that that decision that they made was incorrect, and that needs to be fleshed out below. There is a particular reference that was cited to the PTO. I don't know if it's appropriate for me to discuss it with you now, but it's not misinterpreted, that reference, and that reference clearly shows the vertical lifting of a horizontal conveyor. And we will present that evidence at the court below. We believe that the district court, when faced with the scant record before it, had no other choice but to deny the motion for preliminary injunction. Their basis for irreparable harm was nothing but speculation. There was nothing concrete about it. And Mr. Tibetny testified in this small market, how many has Firefly sold since 2010, with the SC2010 slab. How many have you sold? Are you talking about our machine, the ProSlab 150, Your Honor? I believe we've sold 7, Your Honor, with some others pre-ordered. This is what the record shows below. Since 2010, how many? No, we've only started selling this machine. That one machine. Since 2010, how many have you sold? Answer, 14. I think it's 7, Your Honor. I'm looking at JA763. We didn't start selling machines until 2013. That's actually Mr. Tibetny's comment on how many that he sold. Yes, Your Honor. He's selling a competing machine, right? I don't believe that their machine competes with our machine because it doesn't have the same technology. I'm kidding.  are, they're different machines with different capabilities. I don't believe that they do different things. Your best argument is that the burden of proof, P.I., lies with the patentee. That's correct, Your Honor. And is a high standard of review at this court abuse of discretion? That's correct, Your Honor. The district court did not abuse its discretion based on the record that it had before it. Well, if it's made mistakes such as not understanding that a piece of prior art is not prior is not basis for validity, is that an abuse of discretion when you've made such blatant legal errors? I believe when they made a mistake like that, Your Honor. First of all, I think that the preliminary claim construction and preliminary infringement determination, I don't think those are binding on this case going forward. All this happened at a preliminary stage, and the plaintiff was free to present new evidence and new argument to the court below. But at the preliminary stage, that argument was not made to the district court, so it didn't have the benefit of considering that argument, Your Honor. They possibly even waived any argument about that. And I believe that one way to address it would be to affirm the decision based on the lack of irreparable harm and vacate the remaining portion of the order. That would address their concerns, and we still can move forward with this case. They did not prove a single element that would entitle them to a preliminary injunction to the court below. The court below said... They didn't prove a single element. They didn't prove irreparable harm. They didn't prove a substantial likelihood of success on the merits. They didn't prove the balance of the harms in their favor, and they didn't prove that the public interest went in their favor either, Your Honor. And if we conclude that those three things are in error, they proved all three of them, right? Well, maybe the District Court made a mistake, but it doesn't mean they proved them. So we'd at least have to vacate it and send it back at a minimum? I think you can affirm it based on their failure to show irreparable harm. Thank you, Mr. Smith. Thank you, Your Honor. I hate to use up your rebuttal time, but I have one quick question. I think it's important, at least to me. And that is, can you point us to where in the record you made a showing or some sort of showing that the machines that they were selling or about to sell were the same type, or took away your market and involved your machines, or otherwise... Yes, Your Honor, and Judge Rader was exactly correct in pointing out that the SC2010 is the machine, the Slab-Sod Harvester, that Trebro sells in direct competition with the defendant's machine. One place, Your Honor, would be on 8733, where Mr. Tvetny has asked whether this is a market share you could recoup, and he says, I don't know, probably not. Why not? Because once a farmer buys a Sod Harvester, they're not going to replace it for many years in the future. Okay, approximately how long does a farmer use a given Sod Harvester? And then he goes on to say that all 700 that they've... But your friend made the point that there's something unique and special about their Sod Harvester, and therefore they were engaging in a market that was a different and new market. Is there anything in the record there where that was... There is, Your Honor. I'd have to look up the SC2010 and the concordance in the index to give you the exact pinpoint site, but Judge Rader is exactly correct. That is Trebro's Slab-Sod Harvester. I'm sorry, I don't have the pinpoint site for you. And I also think that argument, that we're not going after the same customers, is belied by the fact that their very first harvester was sold to an existing customer of Trebro's. They are directly in our wheelhouse and selling to our same customer base. Two other things. Briefly, I think the Court's already aware of these two points. I think all arguments concerning the 610 patent are moot in light of the defense counsel's admission that the 610 patent does not qualify as prior art. And with respect to the other machines, I also think that the Court is aware of this issue, but just for the record and with all due respect, I think defense counsel has mischaracterized the testimony on the record concerning these other machines. With regard to these machines, only two of them exhibited the feature at issue, namely raising the horizontal conveyor toward the side carrier and they both entered the market in 2006. So neither one is relevant to the validity issue. Thank you, Your Honor. Thank you. That concludes our morning. All rise. The Honorable Court adjourns until the afternoon of 6 p.m.